UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CC OPERATIONS, LLC | ) | Case No. 17-33389-thf |
| d/b/a eCHECKit | ) | |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL E. WHEATLEY as Trustee | ) | Adv. No. 19-03034-thf |
| For | ) | |
| The Estate of CC Operations, LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| CHRIS MCCARTY and | ) | |
| LOUIS POMERANCE | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

\* \* \* \* \*

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Chris McCarty's Motion to Dismiss, and

on Defendant Louis Pomerance's Partial Motion to Dismiss,[1] the complaint filed against them by

Michael E. Wheatley, as Trustee of the Estate of CC Operations, LLC, pursuant to Federal Rule

of Civil Procedure 12(b)(6) as adopted by Federal Rule of Bankruptcy Procedure 7012(b), on

grounds the Trustee has failed to state a claim upon which relief may be granted.  The Trustee's

complaint generally contends that, due to alleged mismanagement and poor business decisions by

---

[1] Chris McCarty seeks to dismiss the Trustee's twelve-count complaint in its entirety, whereas Louis Pomerance seeks to dismiss all counts except for Count V, which alleges he received a voidable preferential transfer under 11 U.S.C. § 547(b) when he received a $16,945.60 distribution during the LLC's insolvency.  [R. 1 at 18–19].

McCarty and Pomerance (together, "Defendants"), who were part-owners and members of the now-defunct check processing company CC Operations, LLC ("CC Operations" or "Debtor"), Defendants should be held financially liable for failing to adequately capitalize the LLC and failing to otherwise prevent or minimize the LLC's losses.  Trustee also contends Defendants received voidable preferential transfers and fraudulent conveyances.

Defendants' motions to dismiss counterargue that: (1) the LLC was structured to be manager-managed, but Defendants were only minority members of the LLC with no fiduciary duties or obligations to contribute capital; (2) the terms of the operating agreement expressly waived liability for LLC members; and (3) because the alleged misconduct dates back to 2007, and the bankruptcy petition was filed in 2017, the five-year statute of limitations for Trustee's breach of fiduciary duty claims has expired.  As for the preferential transfer claim (Count V), McCarty notes that the body of that claim solely pertains to Pomerance, where it seeks to avoid a single $16,945.60 distribution received by Pomerance (who does not seek to dismiss Count V).  Regarding the fraudulent conveyance claims, Defendants contend that Trustee fails to identify any fraudulent transfers they received from CC Operations.

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(a) and (e).  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (F), (H), and (O).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  For reasons set forth below, the Court finds that the Trustee's complaint fails to state a cause of action against McCarty, and with the sole exception of the preferential transfer allegation in Count V, fails to state a cause of action against Pomerance.  For reasons discussed more fully below, the Court will grant McCarty's motion to dismiss and Pomerance's partial motion to dismiss the Trustee's complaint against them.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2002, Chris McCarty and Louis Pomerance, along with an entity named La-Le, LLC, purchased a check processing business. The business was a franchisor for a network of franchisees that provided check guarantees, verification, and collection services to customers (e.g. merchants that accepted check payments and paid fees to protect against dishonored checks). McCarty and Pomerance formed Checkcare Enterprises, LLC ("Enterprises") to acquire and operate this check processing business, and in 2003, Enterprises hired Cindy Schneider to lead sales and strategic planning. *See Complaint*, [R. 1 at ¶¶ 24–28, 34].

On April 17, 2007, Defendants formed the debtor company CC Operations, LLC (d/b/a "eCKECKit"), a stand-alone check-processing franchisee business, under the laws of Kentucky. [R. 1 at ¶ 13–15]. CC Operations assumed Defendants' debts to La-Le, LLC, and assumed certain liabilities of Enterprises, Defendants' other entity, including certain debts owed by Enterprises to McCarty and Pomerance. [*Id.* at ¶¶ 40–42]. McCarty and Pomerance were both part owners, board members and officers of CC Operations from its inception until July of 2016, each owning 40% of the company and Cindy Schneider owning the remaining 20%. [*Id.*]. Defendants contributed $184,400.88 each, in software and other intangible property, to finance the LLC's operations. [*Id.* at ¶ 46–47].

CC Operations' corporate affairs were to be governed by the Operating Agreement dated November 21, 2007, and later amended via an Amended and Restated Operating Agreement dated July 1, 2016.[2] [R. 1 at ¶¶ 18–24]. The Operating Agreement included, among other provisions,

---

[2] In evaluating a motion to dismiss, "[t]he court is generally not to look beyond the pleadings, but may consider documents incorporated by reference into the pleadings, even if those documents are not attached to the pleadings." *Spradlin v. Pryor Cashman, LLP* (*In re Licking River Mining, LLC*), 565 B.R. 794, 801 (Bankr. E.D. Ky. 2017) (internal citations omitted). The Court will therefore consider the Operating Agreement and the Amended and Restated Operating Agreement referenced in the complaint which are attached to Defendants' motions to dismiss.

liability waivers for LLC members and an obligation to indemnify members for all liabilities incurred. Section 10.2 of the Operating Agreement specifically provides as follows:

> 10.2 Limitation of Liability. Members of the Company will not be liable to the Company or the other Members for monetary damages for conduct as Members except to the extent that the [LLC Act] . . . prohibits elimination or limitation of member liability.

*See* Trustee Response, [R. 31 at 12]. This waiver of fiduciary duties was also embodied in the company's Amended and Restated Operating Agreement: "To the maximum extent permitted by the [LLC Act], any common law or default statutory duties generally owed by members of a limited liability company are hereby disclaimed and shall not be applicable to the Member." [R. 7-2 at 13]. The 2016 Amended and Restated Operating Agreement further provided that CC Operations was a manager-managed LLC and appointed Ms. Jessica Benzakein as manager of the company's business and affairs. *See* Trustee Sur-Reply, [R. 38 at 2].

Prior to CC Operations' inception in 2007, however, a dispute had arisen between Enterprises and some of its franchisees in late 2003, spawning litigation in Georgia which did not resolve until 2008. [R. 1 at ¶¶ 35–37, 41–43]. In April of 2008, Enterprises and the franchisees finalized a Settlement and Asset Purchase Agreement, which resulted in the sale of Enterprises to the franchisees. [*Id.* at ¶ 55]. The franchisees formed a new entity, Checkcare Group, LLC ("Group"), and Group purchased Enterprises' payment processing business and assets. [*Id.*].

Following the franchisees' settlement and asset purchase agreement in 2008, CC Operations continued processing payments as a licensee of the new licensor/franchisor Group, with monthly license fees payable to Group. CC Operations also bought a 9% membership interest in Group, with the former franchisees owning the remaining 91%. [R. 1 at ¶¶ 56–57]. Pursuant to the terms of the Franchisee Settlement, from 2008 to 2010, CC Operations made payments to Group in the amount of $376,546, and Group made payments to Enterprises in the amount of

nearly $380,000 (payments Group agreed to make to acquire Enterprises' payment processing business). [*Id.* at ¶¶ 57–61]. Also between 2008 and 2010, Enterprises made payments of $446,315.88 to McCarty and Pomerance (and an entity owned by Pomerance). [*Id.* at ¶ 60].

\* \* \* \* \*

The Trustee's underlying complaint asserts numerous claims against McCarty and Pomerance including but not limited to breach of fiduciary duty, fraudulent transfers, voidable preference payments, and other bankruptcy and state law claims related to their alleged failures to prevent or mitigate various financial harms CC Operations suffered since the company's inception in 2007. The series of mostly unrelated events which hindered the LLC's operations and caused financial problems over the years can be briefly summarized as follows:

(a) DEBTOR'S ASSUMPTION OF CHECKCARE ENTERPRISES' LIABILITIES: As explained above, in 2007, CC Operations assumed certain liabilities of Checkcare Enterprises, LLC, an entity owned and/or controlled by Pomerance and McCarty, including certain debts owed to the Defendants. [R. 1 at ¶¶ 39–42].

(b) SETTLEMENT WITH FRANCHISEES AND CREATION OF CHECKCARE GROUP: As explained above, to settle litigation filed by multiple franchisees of Enterprises, the franchisees created an entity called the CheckCare Group, LLC, and Group purchased Enterprises' assets. [*Id.* at ¶¶ 35–37, 43, 55].

(c) TRANSFERS FROM CHECKCARE GROUP, TO CHECKCARE ENTERPRISES, TO THE DEFENDANTS: As explained above, between 2008 and 2010, following Group's acquisition of Enterprises, CC Operations made payments to Group in the combined amount of $376,546.00, Group made payments to Enterprises of nearly $380,000.00, and Enterprises paid Defendants $446,315.88 total. [*Id.* at ¶¶ 56–60].

(d) GOVERNMENT SEIZURE OF FUNDS:  In June of 2010, CC Operations' bank account was frozen and $218,307.52 was seized by the U.S. government due to the Food and Drug Administration's claim that certain tobacco companies operated by Native American tribes, which were using CC Operations for their check processing, had failed to pay sales tax on online tobacco sales.  Although $130,984.51 was eventually refunded, the government seizure resulted in a loss of $87,323.01 to CC Operations.  [*Id.* at ¶¶ 63–65].

(e) EMBEZZLEMENT BY FORMER OWNER; NEW MANAGER NAMED: In July of 2010, CC Operations' president and former owner, Cynthia Schneider, embezzled $1,370,415.36 from CC Operations.[3]  After Ms. Schneider's departure in 2010, Jessica Benzakein (who was already working for CC Operations at the time) and Defendants entered into the Amended and Restated Operating Agreement[4] (effective July 1, 2016) which gave Ms. Benzakein a 50% ownership interest in CC Operations (McCarty and Pomerance each retaining 25% membership interests), and designated Ms. Benzakein manager of CC Operations.  [*Id.* at ¶¶ 68–70].

(f) CLIENT'S ACCOUNT TAMPERING: Between 2016 and 2017, CC Operations' client, Staffease, Inc., allegedly "secretly" logged into the Debtor's system and improperly altered their account by manipulating data to give themselves credits, resulting in a loss of $800,000.00 to the Debtor.  [*Id.* at ¶ 75].

(g) CLIENT'S IMPROPER WITHDRAWAL: In November 2016, CC Operations suffered yet another loss of over $50,000 based upon an improper withdrawal of funds by a client, ChequeMate International.  [*Id.* at ¶ 80].

---

[3] Ms. Schneider was charged with federal crimes, convicted, and sentenced.  *See U.S. v Cynthia Schneider*, W.D. KY, No. 3:11CR-22 (3/21/11).  An investigation revealed that she had directly stolen approximately $365,000 from Debtor's accounts and had diverted to herself funds of nearly $1 million which she did not reflect on Debtor's books.
[4] The Amended Operating Agreement from 2016 also included the Limitation of Liability language included in the original agreement which disclaimed personal liability for the LLC's non-managing members.

(h) FUNDS FROZEN AND SUSPENSION OF OPERATIONS: Finally, on October 16, 2017, Base Commerce, LLC (an internet site through which CC Operations processed its payment transmissions) took certain actions related to the Debtor's "reserve account" and froze its processing account, suspending CC Operations' ability to process payments and notify customers of this action. As a result of this string of events culminating in Base Commerce's freezing of Debtor's funds, CC Operations could no longer operate, and its three members decided to file for bankruptcy. [*Id.* at ¶¶ 86–88].

* * * * *

On October 18, 2017, CC Operations filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Michael Wheatley was appointed to serve as Chapter 7 Trustee for the Debtors' estate. On August 23, 2019, Trustee filed the underlying complaint against Defendants, raising twelve counts in total: (I) Breach of Fiduciary Duty of Loyalty; (II) Breach of Fiduciary Duty of Care and Good Faith; (III) Aiding and Abetting Breach of Fiduciary Duty; (IV) Piercing the Corporate Veil/Alter Ego; (V) Avoidance of Transfers as Preferential Transfers; (VI) Fraudulent Transfers/Actual Fraudulent Intent under Bankruptcy Law (11 U.S.C. §§ 548(a)(1)(A), 550(a)(1) and 551); (VII) Fraudulent Transfers/Actual Fraudulent Intent under State Law (11 U.S.C. §§ 544, 550(a), and 551); (VIII) Fraudulent Transfers/Constructive Fraud under Bankruptcy Law (11 U.S.C. §§ 548(a)(1)(B), 550(a)(1) and 551); (IX) Fraudulent Transfers/Constructive Fraud under State Law (11 U.S.C. §§ 544, 550(a), and 551); (X) Failure to Make Required Disposition; (XI) Unjust Enrichment; and (XII) Turnover of Property of the Estate under 11 U.S.C. 542 and 541. *See generally* Trustee's Complaint, [R. 1].

## MOTION TO DISMISS STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, a complaint must be dismissed if it fails to state a claim upon which relief may be granted.  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "provide the grounds of his entitlement to relief", which requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).  The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  If a claim as pleaded lacks a factual element necessary to establish the claim, it is implausible, and the court must dismiss the claim.  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).

## DISCUSSION

Although Defendants McCarty and Pomerance were part owners and members of the debtor company from its inception until its bankruptcy, the Court finds they legally owed no duty to CC Operations as members of the LLC and thus could breach no fiduciary duty to the LLC. Defendants were non-managing members, and the terms of CC Operations' operating agreement expressly waived liability for members.  Further, the Court agrees that much of the alleged misconduct at issue falls outside the statute of limitations for breach of fiduciary duty claims. Based on the facts as presented, the various incidences that plagued the LLC and gave rise to this bankruptcy were largely beyond the Defendants' control and cannot be fairly attributed to their actions or inactions.  For all these reasons, as set forth more fully below, the Court will grant McCarty's motion to dismiss and Pomerance's partial motion to dismiss.

8

**(A)** <u>**COUNTS I – III: Defendants, as Members, Owed No Fiduciary Duty Under the**</u>

<u>**Operating Agreement.**</u>

Counts I, II, and III each fail because Defendants owed no fiduciary duty to Debtor under

the Operating Agreement.  Members of a Kentucky limited liability company like CC Operations

are permitted to waive fiduciary duties in their written operating agreement, and Defendants

Pomerance and McCarty did so via express terms of the LLC's Operating Agreement:

> 10.2 Limitation of Liability. Members of the Company will not be liable to the
> Company or the other Members for monetary damages for conduct as Members
> except to the extent that the [LLC Act] . . . prohibits elimination or limitation of
> member liability.

Defendants are correct that the fiduciary duties of members and managers of a Kentucky limited

liability company are exclusively set forth in KRS 275.170 – the "Duties of care and loyalty"

subsection – of Kentucky's Limited Liability Company Act, and that section makes clear that

"[u]nless otherwise provided in a written operating agreement," those duties exist.  *See also* KRS

275.003(1) (gives maximum effect to the principles of freedom of contract and enforceability of

operating agreements); *Pannell v. Shannon*, 425 S.W.3d 58, 68 (Ky. 2014) (limited liability

companies are "creatures of statute," not primarily by common the law, thus Kentucky's LLC Act

displaces common law where the two conflict).  According to the LLC Act, while the default rule

is that managers and managing members of an LLC owe statutory duties of care and loyalty to the

LLC pursuant to KRS 275.170(1)-(2), LLC members are otherwise free to reduce or eliminate

those duties in the LLC's operating agreement under KRS 275.180(1): "A written operating

agreement may . . . [e]liminate or limit the personal liability of a member or manager for breach

of any duty provided for in KRS 275.170."

The Court concurs that, per the language of KRS 275.170 and 275.180, the existence and

scope of any fiduciary duties owed by Defendants to CC Operations were governed exclusively

by the Operating Agreements, which unambiguously waived any fiduciary duties Defendants would have owed to the company.  The Amended and Restated Operating Agreement similarly disclaimed any default statutory duties generally owed by members:

> To the maximum extent permitted by the [LLC Act], any common law or default statutory duties generally owed by members of a limited liability company are hereby disclaimed and shall not be applicable to the Member.

Kentucky law is clear: an LLC may waive fiduciary duties that are otherwise implied to its members in a written operating agreement.  KRS 275.170.  Notably, Defendants were only members of the LLC, and in Kentucky, a member of a manager-managed LLC does not owe fiduciary duties to the LLC or its members.  *See* KRS 275.170(4).  Because Debtor's Amended and Restated Operating Agreement provided that CC Operations was a manager-managed LLC managed by someone other than Defendants, the Court finds further statutory grounds to reject the contention that Defendants, as members, owed any fiduciary duty to CC Operations at any point in time.

Although Trustee objects that this language absolving CC Operations' members of liability was not adopted until 2016, when the Amended and Restated Operating Agreement appointing Ms. Benzakein as manager was adopted, the terms of the original 2007 Operating Agreement effectively provided the same protection: "Members of the Company will not be liable to the Company or the other Members for monetary damages for conduct as Members . . ."  Defendants had thus waived liability for breach of fiduciary duties since the LLC's inception in 2007 under the terms of the original Operating Agreement.

Count III alleges Defendants aided and abetted the breach of fiduciary duties, but such a claim fails for the same reasons that the underlying claim for breach of fiduciary duty fails.  "To prevail on a claim of aiding and abetting a breach of fiduciary duty, a plaintiff must prove . . . the

existence and breach of a fiduciary relationship." *Insight KY Partners II, L.P. v. Preferred Automotive Services Inc.*, 514 S.W.3d 537, 546 (Ky. App. 2016); *see also Xcell Energy & Coal Co. v. Energy Inv. Grp.*, LLC, 2014 WL 2964076 (Del. Ch., June 30, 2014) (because there was no underlying breach of fiduciary duty, plaintiff failed to state a claim for aiding and abetting). Counts I, II, and III, all of which depend on the existence of fiduciary duties which were waived under the Operating Agreement and are absent here, are dismissed as to both Defendants.

Notwithstanding the Operating Agreement's waiver of duties for LLC members, because a five-year limitations period applies to breach of fiduciary duty claims, KRS 413.120(6), Counts I – III are also time-barred as well, where they allege breaches in regard to undercapitalization of the Debtor "on or before December 2009," and address events that took place before 2012, such as the 2010 tobacco-related seizure of funds and the 2010 embezzlement by Cynthia Schneider.

**(B)** **COUNT IV: Piercing the Corporate Veil is not an Appropriate Remedy.**

Count IV of the complaint requests that the Court effectively treat CC Operations, Group, and Enterprises as alter ego entities, and pierce their collective corporate veils together, to enable Debtor to potentially recover payments to Defendants made by CC Operations. To the extent Count IV asserts "piercing the corporate veil" to establish liability on McCarty and Pomerance to the Debtor, that assertion fails for two reasons.

First, Kentucky endorses the vicarious liability approach to veil-piercing as opposed to the identity approach. *Spradlin v. Beads and Steeds Inns, LLC* (*In re Howland*), 674 Fed. Appx. 482, 486-87 (6th Cir. 2017). This means that "[w]hen considering whether a litigant may use veil piercing to consolidate a debtor and its alter ego into a single entity in a bankruptcy case . . . the doctrine of alter ego does not create assets for or in a corporation. It simply fastens liability upon the individual who uses the corporation merely as an instrumentality in the conduct of his or her

11

own personal business." *Spradlin* at 486.  The Sixth Circuit Court of Appeals in *Spradlin* further explained: "Under the vicarious liability approach, however, veil piercing does not give the pierced entity (i.e., the debtor) an interest in its alter ego's assets—it gives the pierced entity's creditor (i.e., the trustee) an interest in the alter ego's assets in order to satisfy its judgment against the pierced debtor."  In that sense, veil-piercing is a remedy for enforcement of a judgment and not an independent cause of action in and of itself, a distinction Trustee does not dispute.  Kentucky does not permit veil-piercing as a means of consolidating entities to try and create assets for the debtor company, which is what Trustee apparently seeks to do.  To the extent Trustee seeks to pierce CC Operations' veil to recover Debtor's payments to Defendants, that application of the doctrine is not tenable.

Second, to state a claim for veil-piercing under Kentucky law, Trustee would have to show both an "egregious failure to follow corporate formalities," and "a high degree of control over the corporation's day to day operations and decisions," on the part of Defendants.  *Albakri v. A & M Oil Co., Inc.*, 2017 WL 4862510, at \*7-9 (E.D. Ky. Oct. 27, 2017) (quoting *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 164 (Ky. 2012)).  Trustee fails to establish any such level of control or egregious action by either Defendant; on the contrary, Trustee's complaint acknowledges that CC Operations had an operating agreement in place, filed separate tax returns, maintained a separate bank account, prepared separate financial statements, and produced regular annual reports, suggesting that corporate formalities were indeed followed.

Trustee at no point alleges that either McCarty or Pomerance possessed a controlling membership interest in CC Operations, managed or supervised the LLC or its employees, or was in any way responsible for or involved in its daily operations.  Assuming all assertions in the complaint to be true, the evidence of either an "egregious failure to follow corporate formalities"

12

or "a high degree of control over the corporation's day to day operations and decisions" by either

Defendant remains tenuous and inadequately set forth.  Count VI is dismissed.

**(C)      COUNT V: The Preference Claim Does Not Allege McCarty Received Any Transfer.**

Count V seeks the "Avoidance of Transfers as Preferential Transfers (11 U.S.C. § 547(b))

against McCarty and Pomerance," specifically alleging that Debtor made a preferential transfer

payment of $16,945.60 to Pomerance while insolvent.  The Court agrees that the body of Count V

pertains solely to Pomerance, only directly naming Pomerance in alleging that Pomerance received

$16,945.60 from the Debtor.  Count V makes no mention of McCarty nor asserts any claim that

he actually received any preferential conveyances.

Finding no preferential transfer allegations raised against Chris McCarty, Count V is

dismissed as to McCarty.  Where Pomerance's partial motion to dismiss does not seek dismissal

of Count V, that count remains as to Pomerance.

**(D)      COUNTS VI – IX: The Alleged Fraudulent Transfers Are Beyond the Applicable**
**Statute of Limitations.**

Counts VI – IX each allege fraudulent transfers by Defendants under both bankruptcy and

state law.[5]  Though those counts of the complaint fail to specify specifically what those transfers

were, or when they took place, Defendants' motions and Trustee's response help clarify that

Counts VI – IX pertain to the $376,546 that CC Operations paid to Group between 2008-2010.[6]

Those claims are all time-barred, and the "adverse domination" theory does not toll the limitations

period.

---

[5] Counts VI and VII allege actual fraudulent intent underlying the fraudulent transfers, under Bankruptcy and state law, respectively, while Counts VIII and IX allege constructive fraud under Bankruptcy and state law, respectively.
[6] As stated *supra* at 5, per the Franchisee Settlement terms, between 2008-2010, CC Operations paid Group $376,546, Group paid Enterprises $380,000 (payments to acquire Enterprises' business), and Enterprises paid Defendants (and an entity owned by Pomerance) $446,315.88.

Fraudulent conveyance claims may be brought for a period of two years under 11 U.S.C. § 544 and five years under KRS 413.120, so the applicable limitations period is two years for Counts VI and VIII (fraudulent transfer claims based on Bankruptcy law) and five years for Counts VII and IX (fraudulent transfer claims based on state law). *Spradlin v. East Coast Miner, LLC* (*In re Licking River Mining, LLC*), 603 B.R. 336, 365-67, 381-82 (Bankr. E.D. Ky. 2019).[7]  Where the alleged fraudulent transfers all took place between 2008-2010, and the bankruptcy petition was filed seven years later on October 17, 2017, the claims related to those transfers are all barred by the applicable statutes of limitation.

Trustee attempts to cure the time bar under an "adverse domination" theory, but the Court is unpersuaded that the doctrine tolls either the two-year (Bankruptcy law) or five-year (state law) statute of limitations for Trustee's fraudulent transfer claims here.  That doctrine is not generally applicable to LLCs nor applied outside of a "discovery rule" context, and cannot be asserted by an entity other than the Debtor.  Adverse domination, a doctrine that tolls the statute of limitation when tortfeasors dominate and control a corporation so as to prevent the corporation from bringing a timely claim against them, is "merely a corollary of the discovery rule, applied in the corporate context."  *Wilson v. Paine*, 288 S.W.3d 284, 287 (Ky. 2008); *Antioch Co. Litigation Trust v. Morgan*, 644 Fed. Appx. 579, 582 (6th Cir. 2016).  Notably, the present case deals with an LLC rather than a corporation; this Court is unaware of any Kentucky decision applying the theory of adverse domination to LLCs, and other courts have expressly held that the theory is inapplicable in the LLC context.  *See, e.g., Reinbold v. Kohansieh* (*In re Sandburg Mall Realty Mgmt., LLC*),

---

[7] The Court notes that, to the extent any transfers between 2008-2010 implicate the Kentucky Uniform Voidable Transactions Act, KRS 378A.090, that chapter imposes a statute of limitations from one to four years depending on the transfer at issue.

563 B.R. 875, 888-889 (Bankr. C.D. Ill. 2017) (discussing inapplicability of the adverse domination doctrine to LLCs).

Additionally, the Court is persuaded by Defendants' case law which illustrates that the adverse domination theory only applies to claims that could be pursued by the corporation itself. *See e.g. In re Pay n Pak Stores, Inc.*, 141 F.3d 1178 (9th Cir. 1998) (adverse domination does not apply to fraudulent transfer claims); *Resolution Trust Corp. v. Greer*, 911 P.2d 257, 264 (Okla. 1995) (adverse domination, available "only to the corporation and not to its creditors," unavailable to plaintiff standing in creditors' shoes); *Vaughan Co. v. Ultima Homes* (*In re Vaughn*), 498 B.R. 297, 306 (Bankr. D.N.M. 2013) (state limitations period not tolled under adverse domination theory). Put another way, Trustee stands in the Debtor's shoes when bringing these claims, but state and federal fraudulent transfer claims do not belong to a debtor-transferor, as they are not claims that could have been pursued by the "corporation." *See e.g. Cohen v. Ernst & Young, LLP* (*In re Friedman's Inc.*), 372 B.R. 530, 545 (Bankr. S.D. Ga. 2007); *Vaughan*, 498 B.R. at 306-307. "A party asserting creditor-based claims does not stand in the shoes of a bankruptcy debtor," *In re Friedman's*, 372 B.R. at 539, which is where Trustee currently stands.

The Court notes that adverse domination would also not toll the limitations period for any untimely breach of fiduciary duty claims. Under Kentucky law, the doctrine of "adverse domination" does not toll the statute of limitations for breach of fiduciary duty claims, because the "discovery rule" does not apply to claims for breach of fiduciary duty. *See Middleton v. Sampey*, 522 S.W.3d 875, 879 (Ky. App. 2017) ("[T]here is no statutory authority to extend the discovery rule to breach of fiduciary duty claims under KRS 413.120(6)."). Additionally, to the extent Trustee argues that the $376,546 paid between 2008 and 2010 constituted an "illegal distribution"

authorized by Defendants while Debtor was insolvent, Trustee's claim was not raised or developed in the complaint, so it is not before the Court and will not be considered.

Notwithstanding the untimeliness of the fraudulent transfer claims, the Court generally finds that Trustee's complaint falls short of the heightened pleading standards required when pleading actual fraud, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), as Trustee never clearly specifies what intentional wrongdoing or fraudulent intent either Defendant may have had, but merely points to numerous external factors to try to illustrate their relative ineptitude as businessmen. Counts VI – IX all assert claims which are time-barred by the applicable statute of limitations, and plead no specific facts constituting intentional wrongdoing by McCarty or Pomerance, and are thus dismissed.

**(E)    COUNTS X – XII: Claims for Failure to Make Required Disposition, Unjust Enrichment, and Turnover of Estate Property Are Denied.**

Pursuant to KRS 413.120, the Trustee's claims for failure to make required disposition, unjust enrichment, and turnover of property of the estate and are all subject to a five-year statute of limitations, and pursuant to KRS 271B.8-330(3), the statute of limitations for an improper shareholder distribution is two years after the distribution. With the exception of the misconduct by client Staffease and freezing of funds by Base Commerce, all events on which Trustee's claims are based took place during or before 2010 (seven years before the petition date). For that reason, Counts X – XII are all time-barred. Notwithstanding that primary grounds for dismissal, the Court will briefly address the other problems underlying those claims.

Regarding Count X – Failure to Make Required Disposition – Trustee alleges Defendants violated their statutory duties to make required disposition of the property entrusted to them, namely the $365,000.00 embezzled from CC Operations by Cynthia Schneider. As stated *supra*

16

in Subsection (A) of this opinion, Defendants had waived any fiduciary duties they may have owed, including any obligation to refund monies to CC Operations once it was stolen by a third party.  Finding no statutory or contractual duty for either Defendant to suggest their personal liability for the debts, obligations and liabilities of the Debtor, Count X is also denied on that basis.

\* \* \* \* \*

Count XI alleges Defendants were unjustly enriched by the payments of $376,546 paid by CC Operations to Enterprises between 2008 and 2010 to settle the litigation involving CheckCare Enterprises, LLC.  The Court agrees that the key distinction here, fatal to the unjust enrichment claim, is that the transfers at issue were all from the Debtor to *Enterprises*, and not from the Debtor to McCarty or Pomerance.  Kentucky law makes clear that, to meet the first element of an unjust enrichment claim, the plaintiff "must allege that he directly conferred a benefit on the defendant." *SAAP Energy v. Bell*, 2013 WL 4588828, at \*2 (W.D. Ky. Aug. 28, 2013); *see also Commonwealth of KY v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016); *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009).  Because Trustee has failed to allege a single direct transfer made by CC Operations to McCarty or Pomerance, he fails to state a claim for unjust enrichment.  Count XI is dismissed.

\* \* \* \* \*

Finally, regarding Count XII – Turnover of Property of the Estate – Trustee alleges the $376,546 paid between 2008 and 2010 is property of the Estate and subject to turnover pursuant to 11 U.S.C. § 542.  Recovery under Section 542 of the Bankruptcy Code, however, is "limited to assets that are undisputedly property of the estate."  *See In re Amcast Indus. Corp.*, 365 B.R. 91, 121-22 (Bankr. S.D. Oh. 2007) (citing *Stanziale v. Pepper Hamilton LLP* (*In re Student Finance Corp.*), 335 B.R. 539, 554 (D. Del. 2005)); *see also Spradlin v. Khouri* (*In re Bruner*), 561 B.R.

397, 405 (6th Cir. B.A.P. 2017). "A turnover action cannot be used to demand the return of assets subject to a title dispute or an unavoided transfer." *In re Amcast*, 365 B.R. at 96. Where a dispute undoubtedly exists as to whether the transferred funds at issue are property of the estate, Section 542 is inapplicable. Count XII is dismissed.

## CONCLUSION

McCarty and Pomerance may have been unsuccessful in their efforts to keep CC Operations afloat, but ultimately, the Debtor company's failures and bankruptcy cannot be imputed to the individual Defendants to make them liable. Defendants waived any duties they may have owed to the LLC as members under the original 2007 Operating Agreement, and again in the Amended and Restated Operating Agreement. Kentucky gives great deference to the provisions of these written agreements. Moreover, Trustee alleges preferential and fraudulent transfers, but is ultimately unable to identify any actual transfers from CC Operations to McCarty, who allegedly received no money whatsoever from the company. As for Pomerance, with the exception of the $16,945.60 distribution to him from CC Operations, there are likewise no transfers to him identified by Trustee. Though CC Operations may have been mismanaged and certainly had its share of difficulties and misfortunes, taking all allegations in the complaint to be true, the Court still finds no basis for finding Defendants legally responsible for CC Operations' losses and demise.

Counts I – III (breach of duties, and aiding and abetting breach) are dismissed because Kentucky law permits LLC members to waive fiduciary duties in a written operating agreement, and CC Operations' collective Operating Agreements unambiguously waived the duties of members McCarty and Pomerance. Count VI (piercing the corporate veil) is dismissed because, notwithstanding the fact that "piercing the corporate veil" is a remedy rather than a cause of action,

veil-piercing requires a showing of an egregious disregard of corporate formalities and a high degree of control over day-to-day operations which Trustee has failed to establish.  Count V (preferential transfer) is dismissed as to McCarty, who is not named or implicated in the body of the count in any way, but not dismissed as to Pomerance.  Counts VI – IX (fraudulent transfers) are outside of the two-year and five-year statutes of limitations for federal and state fraudulent transfer claims (respectively), and cannot be salvaged with the adverse domination doctrine in this context.  Counts X – XII (failure to make required disposition, unjust enrichment, and turnover of estate property) are also time-barred and dismissed.  The court being sufficiently advised, a separate order will be issued contemporaneously with this memorandum.

Thomas H. Fulton
United States Bankruptcy Judge

Dated:  April 23, 2020

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CC OPERATIONS, LLC | ) | Case No. 17-33389-thf |
| d/b/a eCHECKit | ) | |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| MICHAEL E. WHEATLEY as Trustee | ) | Adv. No. 19-03034-thf |
| For | ) | |
| The Estate of CC Operations, LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| CHRIS MCCARTY and | ) | |
| LOUIS POMERANCE | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

* * * * *

**ORDER**

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Chris McCarty's Motion to Dismiss, [R. 5], and Louis Pomerance's Partial Motion to Dismiss, [R. 6], are hereby **GRANTED**. A pre-trial conference as to the remaining claims will be scheduled via separate order.

Thomas H. Fulton
United States Bankruptcy Judge

Dated: April 23, 2020